IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MEI TECHNOLOGIES, INC.,**
a Texas Corporation,

      **Plaintiff,**

vs.                                                            No. CIV 09-0425 RB/LFG

**DETECTOR NETWORKS**
**INTERNATIONAL, LLC,** a New Mexico
limited liability company,
**LOUIS GUILLEBAUD,**
a citizen of the state of New Mexico, and
**DAVID MELANSON,** a citizen of the
state of New Mexico,

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant David Melanson's Motion to Dismiss, filed on May 26, 2009. Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, Mr. Melanson's Motion to Dismiss is **DENIED**.

**I.**  **Background.**

The following background narrative is based on the allegations of Plaintiff MEI Technologies (hereinafter "MEI"), as set forth in the First Amended Complaint, which, at this stage of the litigation, have not been substantiated. For purposes of analyzing Mr. Melanson's Motion to Dismiss, however, the Court accepts MEI's well-pleaded allegations as true. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

MEI is a systems engineering company that is comprised primarily of engineers and scientists. Defendant Detector Networks International, LLC's (hereinafter "DNI") business is

building radiation detection systems for use in transshipment facilities. This controversy arises out of a teaming agreement between MEI and DNI to respond to a request for proposal by the Pacific Northwest National Laboratories (hereinafter "PNNL") for a radiation detection straddle carrier (hereinafter "RDSC") project. MEI's possession of relevant proprietary information and technical expertise and DNI's lack of technical knowledge regarding the production of a compliant proposal, including the development of an engineering blueprint for the RDSC project, allegedly formed the basis for the teaming agreement. As part of the agreement, DNI promised, among other things, that, if it received the contract, it would negotiate in good faith for MEI to become a subcontractor on the RDSC project. The teaming agreement was executed by MEI on July 16, 2008. DNI, however, did not execute the teaming agreement until October 2, 2008, four days after it executed the contract with PNNL for the RDSC project. MEI, ultimately, was not awarded the expected subcontract.

Mr. Melanson plays a key role in this dispute. In October 2006, he began his employment with MEI as an engineer. On October 16, 2006, Mr. Melanson signed an employee non-disclosure agreement with MEI. Pursuant to the terms of the non-disclosure agreement, Mr. Melanson promised, among other things, (1) that he would protect MEI's trade secrets and confidential information; (2) that he would not engage in any business activity which conflicted with the interests of MEI; (3) that, upon termination of his employment with MEI, he would return all documents containing confidential information or relating to MEI's business; and (4) that, after the termination of his employment with MEI, he would continue to protect MEI's trade secrets and confidential information, not divulge MEI's trade secrets and confidential information, either for direct personal gain or for the purpose of diverting business away from MEI, and not engage in any business activity which would compromise the intent of the non-disclosure agreement.

In DNI-MEI's proposal for the RDSC project, Mr. Melanson was listed as one of three key

personnel for the project. The proposal described him as the prospective chief engineer for the RDSC project. Beginning in July 2008, Mr. Melanson began working on the RDSC proposal. In late October 2008, after DNI and PNNL had executed the contract for the RDSC project, Defendant Louis Guillebaud notified MEI that Mr. Melanson was resigning from MEI and that DNI intended to hire him. MEI notified DNI that it objected to DNI employing Mr. Melanson. DNI, however, gave MEI assurances that hiring Mr. Melanson would not interfere with MEI's work on or compensation for the RDSC project. Mr. Melanson resigned his employment with MEI effective November 14, 2008, at which time he accepted employment with DNI.

Mr. Melanson's employment with DNI allegedly allowed DNI to proceed with the RDSC project without awarding MEI a subcontract. More specifically, MEI alleges (1) that, during the course of his employment with MEI, Mr. Melanson acquired proprietary information; (2) that he wrongfully disclosed MEI proprietary information to DNI in breach of his non-disclosure agreement with MEI; (3) that Mr. Melanson used proprietary information to the benefit of DNI and detriment of MEI; (4) that he aided and abetted DNI's breach of its fiduciary duties to MEI; and (5) that Mr. Melanson made an agreement with Mr. Guillebaud and DNI that, if the RDSC project contract was awarded to DNI, he would leave MEI and use the proprietary information he had received, during the course of his employment with MEI, to provide DNI with the ability to complete the RDSC project without MEI as a subcontractor and to not pay MEI for the work it had performed. Moreover, MEI asserts the following claims against Mr. Melanson: (Count Two) Breach of Fiduciary Duty and Aiding and Abetting DNI and Mr. Guillebaud's Breaches of Fiduciary Duty; (Count Seven) Breach of Contract; (Count Eight) Misuse, Conversion, and Misappropriation of MEI Proprietary Information; and (Count Nine) Civil Conspiracy.

**II.     Applicable Legal Standard.**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). For purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *David*, 101 F.3d at 1352. The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## III.     Discussion.

As a preliminary matter, MEI's First Amended Complaint clearly provides Mr. Melanson with fair notice of the claims against him. FED. R. CIV. P. 8(a)(2); *Robbins*, 519 F.3d at 1250. Moreover, MEI's factual allegations are specific and detailed enough to meet the plausibility standard. *See Twombly*, 550 U.S. at 570; *Robbins*, 519 F.3d at 1247. Finally, "pleading on 'information and belief' in appropriate circumstances fits well with the spirit of the rules." *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1372 (10th Cir. 1979). The annunciation of the plausibility standard did not abrogate this holding. Indeed, the plausibility standard is designed to require a plaintiff to set forth factual allegations in the complaint that are specific and detailed enough (1) to provide each defendant with notice of the claims against it and (2) to allow the Court

to evaluate the sufficiency of a plaintiff's claims. *See Robbins*, 519 F.3d at 1248. So long as sufficient factual allegations are set forth in the complaint, it is entirely irrelevant whether a plaintiff uses the tentative language of "on information and belief" or the more direct language of straightforward factual assertion. *See Id.*

### A.  Breach of Fiduciary Duty.

To state a claim against Mr. Melanson for breach of fiduciary duty, MEI must allege (1) that Mr. Melanson had a fiduciary obligation to MEI and (2) that Mr. Melanson committed an action in violation of his fiduciary duty. *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 92 N.M. 297, 302, 587 P.2d 444, 449 (N.M. Ct. App. 1978). Under New Mexico law, it is well settled that the employment relationship is one of trust and that an employee owes a duty of loyalty to his employer. *Id.* Although an employee may lawfully seek other employment or even make arrangements to compete with his employer, "he may not use confidential information peculiar to his employer's business and acquired through the course of employment." *Id.*

MEI alleges (1) that Mr. Melanson acquired proprietary information in the course and scope of his employment with MEI; (2) that, as an MEI employee, Mr. Melanson owed MEI related fiduciary duties of confidentiality and loyalty, including the duties to keep proprietary information confidential and to not use proprietary information to commercially disadvantage MEI's business; and (3) that Mr. Melanson breached his fiduciary duties by wrongfully disclosing proprietary information to DNI and using proprietary information he had acquired, during his employment with MEI, for the benefit of DNI and to the detriment of MEI. Therefore, MEI has successfully stated a claim against Mr. Melanson for breach of fiduciary duty.

Mr. Melanson argues that the teaming agreement between MEI and DNI allowed him to share proprietary information with DNI, both during his employment with MEI and during his

employment with DNI. This defense, however, raises factual issues that are beyond the scope of a motion to dismiss. Indeed, the limited nature of a Rule 12(b)(6) motion tests only the sufficiency of a plaintiff's factual allegations within the four corners of the complaint. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

### B. Aiding and Abetting Breaches of Fiduciary Duty.

MEI claims that Mr. Melanson aided and abetted DNI's breach of its fiduciary duties owed to MEI. New Mexico recognizes tort liability for the aiding and abetting of a breach of fiduciary duty. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 124 N.M. 186, 191, 947 P.2d 143, 148 (N.M. 1997).

> In order to state such a claim, a plaintiff must allege and prove the following: (1) a fiduciary of the plaintiff breached a duty owed to the plaintiff; (2) the defendant knew of such a duty; (3) the defendant intentionally provided substantial assistance or encouragement to the fiduciary to commit an act which the defendant knew to be a breach of duty; and (4) damages to the plaintiff were caused thereby.

*Id.*

MEI alleges that a joint venture or other confidential relationship existed between DNI and MEI, which gave rise to fiduciary duties of loyalty, care, and fair dealing. MEI also alleges that Mr. Melanson knew of these fiduciary duties, and, by improperly using proprietary information, intentionally assisted DNI to breach its fiduciary duties to MEI. MEI further alleges that, as a result of DNI's breach of its fiduciary duties, it lost a promised subcontract worth approximately $2.05 million dollars. These allegations are clearly sufficient to state a claim against Mr. Melanson for aiding and abetting a breach of fiduciary duty. *See Id.*

### C. Breach of Contract.

A cause of action for breach of contract requires (1) the formation of a contract and (2) the breach of a contractual promise. *See Nance v. L.J. Dolloff Associates, Inc.*, 138 N.M. 851, 856, 126 P.3d 1215, 1220 (N.M. Ct. App. 2005). MEI alleges that Mr. Melanson entered into a contractual

agreement with MEI when he signed an employee non-disclosure agreement on October 16, 2006. MEI further alleges that Mr. Melanson breached this agreement by wrongfully disclosing proprietary information to DNI, causing loss to MEI. These allegations are sufficient to state a claim for breach of contract.

### D. Misuse, Conversion, and Misappropriation of Proprietary Information.

MEI alleges that Mr. Melanson misappropriated MEI's proprietary information in violation of the New Mexico Uniform Trade Secrets Act (hereinafter "UTSA"). To state a claim for misappropriation of proprietary information under the UTSA a plaintiff may allege the "disclosure or use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." N.M. Stat. Ann. § 57-3A-2B (1978).

In this case, MEI alleges that Mr. Melanson, in the course and scope of his employment with MEI, acquired knowledge of trade secrets and other confidential information. MEI further alleges that, by signing a non-disclosure agreement, Mr. Melanson had reason to know that his knowledge of MEI's trade secrets and confidential information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. Finally, MEI alleges that Mr. Melanson wrongfully disclosed MEI's trade secrets and confidential information to DNI, causing monetary and other damages to MEI. These allegations are sufficient for MEI to state a claim against Mr. Melanson for misappropriation of trade secrets under the UTSA.

Mr. Melanson argues that the teaming agreement between MEI and DNI provided him with implied consent to share proprietary information with DNI both during his employment with MEI and during his employment with DNI. This defense, however, raises factual issues that are beyond

the scope of a motion to dismiss. Indeed, the limited nature of a Rule 12(b)(6) motion tests only the sufficiency of a plaintiff's factual allegations within the four corners of the complaint. *Mobley*, 40 F.3d at 340.

### E.  Civil Conspiracy.

A civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Armijo v. National Surety Corporation*, 58 N.M. 166, 178, 268 P.2d 339, 346-47 (N.M. 1954). In New Mexico, civil conspiracy, unlike criminal conspiracy, is not an independent claim for damages; instead, the purpose of a civil conspiracy claim is to make all members of the conspiracy jointly and severally liable for torts arising out of the conspiracy. *Seeds v. Lucero*, 137 N.M. 589, 592, 113 P.3d 859, 862 (N.M. Ct. App. 2005). "Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy; and (3) the damage resulting from such act or acts." *Las Luminarias of the New Mexico Council of the Blind*, 92 N.M. at 300, 587 P.2d at 447.

In this case, MEI alleges (1) that Mr. Melanson and Mr. Guillebaud, acting on behalf of himself and DNI, entered into an agreement to commercially defraud MEI; (2) that, in furtherance of the conspiracy, Mr. Melanson, Mr. Guillebaud, and DNI unlawfully used MEI's proprietary information, breached contracts, and breached their fiduciary duties to MEI; and (3) that, as a result of the conspiracy, MEI suffered monetary damages, including the loss of approximately $2.05 million that DNI allegedly owed MEI under their alleged agreement. Indeed, MEI clearly identifies the alleged conspirators, the general time frame in which the conspiracy took place, and the objects of the alleged conspiracy. *See Twombly*, 550 U.S. at 565 n.10. These allegations, therefore, are sufficient to state a claim for civil conspiracy upon which relief can be granted.

## IV. Conclusion.

MEI has made sufficient factual allegations to state claims against Mr. Melanson for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, breach of contract, misuse, conversion, and misappropriation of proprietary information, and civil conspiracy.

**WHEREFORE,**

**IT IS ORDERED** that Mr. Melanson's Motion to Dismiss is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**