## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MEI TECHNOLOGIES, INC.,**
**a Texas Corporation,**

        **Plaintiff,**

**vs.**                            **No. CIV 09-0425 RB/LFG**

**DETECTOR NETWORKS**
**INTERNATIONAL, LLC, a New Mexico**
**limited liability company,**
**LOUIS GUILLEBAUD,**
**a citizen of the state of New Mexico, and**
**DAVID MELANSON, a citizen of the**
**state of New Mexico,**

        **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff MEI Technologies, Inc.'s ("MEI's") Application for Temporary Restraining Order and Preliminary Injunction (Doc. 20), filed on June 11, 2009, and Defendants Detector Networks International ("DNI") and Louis Guillebaud's Motion to Dismiss Claims Subject to Arbitration, and to Dismiss Remaining Claim for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay Proceedings[1] (Doc. 12), filed on May 28, 2009. Jurisdiction arises under 28 U.S.C. § 1332. Venue is proper in the Court, pursuant to 28 U.S.C. § 1391(a). Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I find that Plaintiff's motion should be denied and that Defendants' motion should be denied insofar as it requests dismissal, and granted with respect to the request in the alternative to stay this lawsuit pending a decision by the Western District of Texas on the arbitration petition filed therein.

---

[1] On June 15, 2009, Defendant David Melanson joined in this motion.  (Doc. 22.)

## I.    Background.

Since 1992, MEI has performed systems engineering of large complex projects.  Based in Houston, MEI is comprised primarily of engineers and scientists.  Defendant Guillebaud founded Albuquerque-based DNI in July 2006.  Defendant Melanson was an engineer for MEI from October 2006 until he was hired by DNI in November 2008.  As an employee of MEI, Mr. Melanson signed a Non-Disclosure Agreement ("NDA").

In July 2008, DNI and MEI negotiated an Exclusive Teaming Agreement ("ETA") in order to respond to a request for proposal ("RFP") issued by Pacific Northwest National Laboratories ("PNNL") in June 2008 for the development of a radiation detector straddle carrier system ("RDSC") to scan cargo containers.  Mr. Melanson was MEI's chief engineer on the RDSC proposal.

In the ETA, DNI was designated as the prime contractor and MEI was designated as the subcontractor.  Edelmiro Muniz, CEO of MEI, signed the ETA on July 16, 2008.  (Doc. 3-4 at 8.) Mr. Guillebaud executed the ETA on October 2, 2008.  (Doc. 3-4 at 8.)

The ETA states, inter alia, that each party will bear its own "costs, risks and liabilities" up to the award of the prime contract and "[n]either party shall have any right to any reimbursement, payment or compensation of any kind from the other during the period prior to the award of the subcontract . . . . "  (Doc. 3-4 ¶ 6.)  In the event the prime contract was obtained, DNI agreed to "enter into good faith negotiations with the sub for a subcontract."  (Doc. 3-4 ¶ 8.)  Additionally, the ETA specified: "If the Prime is awarded a contract for the subject RFP, the parties agree to exert their best efforts to negotiate a subcontract, and agree that in the exercise of their judgment, they shall not be unreasonable, arbitrary, or capricious."  (Doc. 3-4 ¶ 18.f.)  The parties did not intend for the ETA "to constitute or create a joint venture . . . . "  (Doc. 3-4 ¶ 21.)  The parties agreed that

2

the ETA would be enforced and interpreted under New Mexico law.  (Doc. 3-4 ¶ 29.)

Significantly, Paragraph 28 of the ETA states: "The parties agree that they will use the procedures outlined in 'Dispute Resolution' (Exhibit 'C,' attached hereto and made a part hereof), to resolve any dispute which may arise between them under this Agreement."  (Doc. 3-4 ¶ 28.)

Exhibit C, entitled "Dispute Resolution" provides, in pertinent part:

Either party may initiate dispute resolution procedures under the Teaming Agreement (TA) by sending written notice to the other party specifically stating the complaining party's claim (complaint) and requesting dispute resolution in accordance with Article 28 of the Teaming Agreement to which this Exhibit is attached ("notice"). The party receiving the notice ("receiving party") shall reply with designation of a person authorized to settle the dispute and shall list two alternative dates (both of which must be within fourteen (14) days after receipt of the notice) for a meeting at the receiving party's offices or at a mutually agreeable other location.

The parties' authorized representatives shall meet on such date and time as they may mutually agree to be advantageous for potential resolution of the dispute referred to in the complaint and may, if they so agree, employ a neutral mediator to attempt to resolve the dispute in accordance with the Mediation Rules of the American Arbitration Association ("AAA") then in effect for commercial disputes; provided, however, that if the dispute has not been resolved within ninety (90) days after the date when the receiving party received the notice invoking the dispute resolution procedures, then the complaining party may require that the controversy be settled by arbitration in accordance with the Rules of the American Arbitration Association for Complex Commercial Disputes, by three (3) arbitrators who shall be neutral, independent, and generally knowledgeable about the TA or its covenants which gave rise to the dispute.  The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16; provided, however, that the arbitrators shall include in the report/award a brief list of findings, with supporting evidentiary references, upon which they have relied in making their decision.  Judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof.  The place of arbitration shall be Austin, Texas.

(Doc. 3-4, Ex. C.)

In September 2008, PNNL awarded the $23 million contract to DNI.  After DNI received the PNNL contract, it did not negotiate a subcontract with MEI.

In November 2008, MEI CEO Edelmiro Muniz called DNI and demanded payment of

$322,000 for the work MEI had done in preparing the RDSC Proposal.  In December 2008, MEI refused to do any more work pursuant to the ETA.  On January 14, 2009, MEI sent a demand to DNI that included amounts for "lost profits" and "general and administrative expenses" in the total amount of $477,256.

According to MEI, DNI lacked the expertise to prepare the RDSC proposal and used MEI to obtain proprietary information.  MEI believes it is entitled to reimbursement for its costs for its participation in the ETA and repayment of start up funds that MEI provided to DNI and Guillebaud as far back as 2006.

On April 1, 2009, MEI sent a letter notifying DNI that it intended to pursue claims against DNI.  In its letter, MEI expressly acknowledged that it requested dispute resolution in accordance with Exhibit C to the ETA, identified representatives who were authorized to settle the dispute, and proposed dates for a mediation.  An April 16, 2009 mediation with William C. Madison was unsuccessful.

On April 30, 2009, MEI filed this lawsuit against DNI, Mr. Guillebaud, and Mr. Melanson. MEI's First Amended Complaint contains the following claims:

> Count One: Breaches of Fiduciary Duty and Other Duties and Aiding and Abetting Breaches of Fiduciary Duty Against Defendants DNI and Guillebaud;
> Count Two: Breaches of Fiduciary Duty and Aiding and Abetting Breaches of Fiduciary Duty Against Defendant Melanson;
> Count Three: Misrepresentation and Tortious Concealment Against Defendants DNI and Guillebaud;
> Count Four: Breach of Contract and Estoppel Concerning Proposal Work and Head Start Work Against Defendant DNI;
> Count Five: Breaches of the ETA and Subcontract Payment Obligations Against Defendant DNI;
> Count Six: Breaches of the Implied Duties and Covenants of Good Faith and Fair Dealing Against Defendant DNI;
> Count Seven: Breach of Contract Against Defendant Melanson;
> Count Eight: Misuse, Conversion, and Misappropriation of MEI Proprietary Information Against All Defendants;

4

Count Nine: Civil Conspiracy Against All Defendants;
Count Ten: Preliminary and Permanent Injunctive Relief Against All Defendants;
Count Eleven: Declaratory Judgment and for Rescission of the ETA;
Count Twelve: Breaches of Contract and Payments Due Against Defendant DNI (this claim does not involve the ETA);
Count Thirteen: Imposition of Equitable Lien; and
Count Fourteen: Imposition of Constructive Trust.

MEI claims damages exceed $3,000,000.

On May 28, 2009, DNI and Mr. Guillebaud, and Mr. Melanson, as a necessary party-petitioner, filed a Petition to Compel Arbitration against MEI in the United States District Court for the Western District of Texas, Austin Division, Cause No. A09CA-419 LY (U.S. District Judge Lee Yeakel) ("Texas action" or "arbitration petition"). On June 25, 2009, Mr. Melanson moved to join in the Petition to Compel Arbitration. In the Texas action, DNI, Mr. Guillebaud, and Mr. Melanson ask the district court for the Western District of Texas, under its authority granted in 9 U.S.C. § 4, to declare that the arbitration agreement is valid, binding, and enforceable and to compel MEI to arbitrate the claims raised in the First Amended Complaint, with the exception of Count 12.

## III.   Discussion.

### A.   MEI's Application for Temporary Restraining Order and Preliminary Injunction.

MEI seeks to enjoin DNI from taking any further action with respect to the Texas action until this Court rules on Defendants' Motion to Dismiss Claims Subject to Arbitration, and to Dismiss Remaining Claim for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay Proceedings (Doc. 12). As grounds, MEI states that (1) the first-filed doctrine requires this Court to adjudicate all issues; (2) the arbitration provisions do not mandate that all disputes be arbitrated; (3) Defendants should be enjoined from proceeding in the Texas action based on judicial economy; and (4) injunctive relief is appropriate.

The first-filed rule provides that the first federal district court which obtains jurisdiction of

5

parties and issues should have priority and the second court should decline consideration of the action. *Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (unpublished); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982).   Founded on notions of judicial economy, the rule embodies the concept that the "simultaneous prosecution in two different courts of cases relating to the same parties and issues leads to the wastefulness of time, energy, and money." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (quotation omitted).   In order for the first-filed rule to apply, the issues and parties need only be "substantially similar." *Ed Tobergte Assocs. v. Zide Sport Shop*, 83 F.Supp.2d 1197, 1198 (D. Kan. 1999) (citation omitted).

It bears underscoring that the first-filed doctrine does not constitute an invariable mandate, but is only a "presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (quotation omitted); *see also Buzas*, 1999 WL 682883, at *2 (observing that the policy considerations underlying of rule require that it not be mechanically applied); *Hospah*, 673 F.2d at 1164 (same).   Notable exceptions to the first-filed rule include (1) where the balance of convenience favors the second-filed action; and (2) where special circumstances warrant giving priority to the second suit. *Employers Ins. of Wausau*, 522 F.3d at 275.

Courts have held that a party cannot circumvent a forum selection clause simply by filing a lawsuit in a different forum and then asserting that the first-filed doctrine prevents a subsequent lawsuit in the proper forum. *See Megadance USA Corp. v. Kristine Knipp*, ____ F.Supp.2d ____, 2009 WL 1593493 (D. Mass. June 8, 2009) (stating "[i]t is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause.") (citing *Wellons v. Numerica Savings Bank, FSB*, 749 F.Supp. 336, 338 (D. Mass. 1990)); *TDY Industries, Inc. v.*

*Hamilton Sundstrand Corp.*, 2007 WL 1740855 *5 (W.D. Pa. June 14, 2007) (determining that plaintiff in first-filed lawsuit was bound by the forum selection provision requiring litigation to occur in the forum of the second-filed lawsuit).  It is material that none of the cases cited by MEI applied the first-filed doctrine to enjoin a second-filed action brought to compel arbitration pursuant to an agreement to arbitrate in another district.

While there are no cases directly on point within the Tenth Circuit, it stands to reason that, if the rule were that a party could circumvent a forum selection clause simply by filing a lawsuit in a different forum and then asserting that the first-filed doctrine trumped, forum selection clauses would be rendered meaningless.  As a practical matter, the first-filed doctrine neither requires this Court to enjoin Defendants from taking action in the Texas action nor mandates that this Court adjudicate the question of whether the arbitration provisions should be enforced.  The parties' choice of Austin as the location for arbitration should be honored.  The Court declines to apply the first-filed doctrine with respect to the Texas action.

This course of action comports with binding Tenth Circuit authority holding that only the Western District of Texas, and not this Court, may compel arbitration.  *See Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).

In *Ansari*, the Tenth Circuit interpreted § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, which states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing

7

and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

The Tenth Circuit observed that courts have taken three different approaches when deciding whether a district court may compel arbitration when the arbitration agreement states that arbitration shall take place in another district.  *Ansari*., 414 F.3d at 1218.  In squarely rejecting the Fifth Circuit approach, which provides a district court may compel arbitration in the district specified in the arbitration agreement, the Tenth Circuit stated: "No statutory language supports [the Fifth Circuit's] approach."  *Id*. at 1218-19 (*rejecting Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1278 (5th Cir. 1975)).  In considering the Ninth Circuit's approach, which permits the district court to compel arbitration in its own district, and ignore the forum specified in the arbitration clause, the Tenth Circuit noted that such an approach fails to recognize the distinctions between § 4 and 9 U.S.C. §§ 9-11 and fails to give effect to all of the § 4 statutory language.  *Ansari*, 414 F.3d at 1219 (*analyzing Textile Unlimited, Inc. v. ABMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001)).

In adopting the majority view, the Tenth Circuit held that "where the parties agreed to arbitrate in a particular forum, only a district court in that forum has authority to compel arbitration under § 4."  *Ansari*, 414 F.3d at 1219-20 (*citing Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995); *Snyder v. Smith*, 736 F.2d 409, 420 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 877 (7th Cir. 1998); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269

F.Supp.2d 356, 363 (S.D.N.Y. 2003); and *Roe v. Gray*, 165 F.Supp.2d 1164, 1173 (D.Colo. 2001)

(Babcock, J. discussing same rationale and reaching same conclusion as *Ansari* four years before

*Ansari*.).  In other words, "a district court lacks authority to compel arbitration in other districts, or

in its own district, if another has been specified for arbitration."  *Ansari*, 414 F.3d at 1220 (citation

omitted).

> The Tenth Circuit explained its rationale for following the majority view as follows:

>> The prohibition on extrinsic orders affecting arbitration thus is clear both from the language of § 4 itself, prescribing a geographic nexus between the arbitration and the court issuing an order to compel, and the case law which has interpreted this as a directive to courts to abstain from controlling intervention in arbitration proceedings outside their district.

*Ansari*, 414 F.3d at 1220 (*quoting Merrill Lynch*, 49 F.3d at 329).

As a practical matter, the *Ansari* court affirmed an order of a district judge in Colorado

denying a motion to compel arbitration in Washington, D.C., the location selected in the parties'

arbitration agreement.  *Ansari*, 414 F.3d at 1219-20.  The Tenth Circuit stated: "the district court

acted in accordance with the FAA's purpose to enforce private agreements, which requires

rigorously enforcing agreements to arbitrate."  *Id*. at 1220 (citing *Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (recognizing "a strong presumption in favor of

enforcement of freely negotiated contractual choice-of-forum provisions")).  With regard to both

policy considerations and practical applications, *Ansari* dictates the result herein.

In the instant lawsuit, the parties selected Austin as the location for arbitration.  Because the

parties agreed on Austin as the site for arbitration, and Austin is located within the Western District

of Texas, only the district court for the Western District of Texas has the authority to compel

arbitration.  *Ansari*, 414 F.3d at 1220.  For this reason, the Texas action was properly filed and

should proceed.  Under these circumstances, it would be legally inappropriate to apply the first-filed

doctrine to the Texas action.

While MEI initially contends that the preliminary injunction factors are inapplicable where the first-filed rule applies, relying on *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993), MEI goes on to argue that application of such factors would lead to the conclusion that a temporary restraining order and preliminary injunction should be issued. For this reason, the Court will address the preliminary injunction factors.

In order to obtain a preliminary injunction, MEI must demonstrate:

> (1) that it has a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) that the preliminary injunction if issued will not adversely affect the public interest.

*See Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1246 (10th Cir. 2001). As the party seeking the preliminary injunction, MEI bears the burden of proof. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1075 (10th Cir. 2009).

MEI has offered neither case law, nor evidence, to prove any of these factors. As discussed in Section III. B. *infra*, it is uncertain whether MEI will prevail in the Texas action. With respect to the second factor, irreparable injury, MEI relies on diversion of its resources to the Texas action and contends that it would have to assert the claims raised herein as counterclaims in the Texas action. Litigation expenses are insufficient to show irreparable injury. Additionally, MEI believes that its substantive claims are compulsory counterclaims to the arbitration petition. As a result, MEI fears it will be forced to litigate its claims in a forum not of its choosing and/or be subject to duplicative proceedings in two districts and circuits. The premise on which MEI bases its parade of horribles, *i.e.* that MEI's substantive claims are compulsory counterclaims to the arbitration petition, is legally incorrect.

10

Simply put, MEI's substantive claims are not compulsory counterclaims to the arbitration petition.  " '[A] dispute covered by a contract's arbitration clause need not-indeed, may not-be asserted as a compulsory counterclaim in litigation. An arbitration clause is just a particular kind of forum-selection clause.' "  *Sokkia Credit Corp. v. Bush*, 147 F.Supp.2d 1101, 1106 (D. Kan. 2001) (quoting *Publicis Commc'n v. True N. Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997).  Indeed, it is well-recognized that if a defendant's motion to compel is ultimately denied, the plaintiff's claims can be litigated in the original forum.  *See Silver v. Radiance Medspa Franchise Group, PLLC*, 2006 WL 2925699 *2-3 (D. Colo. Oct. 10, 2006).

As Defendants point out in their brief, the issues of law to be considered in deciding whether the parties agreed to arbitrate are separate from those to be considered in deciding the substance of MEI's claims.  *See Berrey v. Asarco Inc.*, 439 F.3d 636, 645 (10th Cir. 2006) (a counterclaim is compulsory if "the issues of fact and law raised by the principal claim and the counterclaim are largely the same").  In the instant case, the issues of fact and law concern alleged breach of fiduciary duties, misrepresentation, breach of contract, breaches of the covenants of good faith and fair dealing, misuse, conversion, misappropriation of proprietary information, and civil conspiracy. With respect to the arbitration petition, the issues of fact and law concern the validity and the scope of the arbitration agreement.  Clearly, these issues are not largely the same.  Because the substantive claims are not compulsory counterclaims to the arbitration petition, MEI would not be forced to litigate its claims in the Texas action or be subjected to duplicative proceedings.  Accordingly, MEI's arguments concerning irreparable injury are not plausible.

With respect to the third preliminary injunction factor, which is whether threatened injury to MEI outweighs the harm the preliminary injunction might cause Defendants, MEI asserts that, because Defendants have not challenged venue or subject matter jurisdiction, they are bound to

11

litigate herein.

It bears underscoring that MEI has neither identified nor proven an irreparable harm that it will suffer if the Texas action proceeds. On the other hand, if the Texas action is enjoined, Defendants may not obtain a ruling on their arbitration petition. Under *Ansari*, only the Western District of Texas may enforce the arbitration agreement; this Court is prohibited by *Ansari*, which is binding Tenth Circuit precedent, from enforcing the arbitration agreement. If this Court enjoins Defendants from proceeding with the Texas action, Defendants will be deprived of a forum in which to obtain a judicial determination on the whether the arbitration agreement is enforceable. To be clear, the threatened injury to MEI does not outweigh the harm the preliminary injunction might cause Defendants.

Finally, MEI contends that issuance of a temporary restraining order and preliminary injunction here is in accordance with the public interest. The Tenth Circuit has held that the FAA "evinces a strong policy in favor of arbitration." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). Under the circumstances of this case, it would not be in the public interest to prevent Defendants from obtaining a ruling on whether to enforce the arbitration agreement in the forum in which MEI agreed to arbitrate. MEI has not met its burden with respect to the preliminary injunction factors. The Court finds that the injunctive relief requested by MEI should not issue. MEI's Application for Temporary Restraining Order and Preliminary Injunction will be denied.

**B.     Defendants' Motion to Dismiss Claims Subject to Arbitration, and to Dismiss Remaining Claim for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay Proceedings.**

Defendants argue that (1) all claims, with the exception of Count Twelve, are subject to the arbitration provisions; (2) Count Twelve should be dismissed without prejudice for lack of subject

matter jurisdiction; and (3) in the alternative, the Court should enter a stay of proceedings pending a ruling in the Texas action.

Diversity jurisdiction is present.  Defendants' attack on subject matter jurisdiction rests on the premise that all claims, except Count 12, are subject to arbitration.  Count 12 concerns extensions of start up costs, and the like, that total less than $75,000.  When all the claims are considered, however, the amount in controversy exceeds $75,000.  Venue is proper as Defendants are citizens of New Mexico.  28 U.S.C. § 1391(a).  Moreover, none of the Defendants has objected to venue.  While *Ansari* directs that the Western District of Texas must decide whether to compel arbitration, the Tenth Circuit has held that the rule in *Ansari* is not jurisdictional.  *Image Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1052 (10th Cir. 2006).  In that subject matter jurisdiction exists, MEI's claims may remain pending while the Western District of Texas considers the Texas action.  For this reason, the motion to dismiss claims subject to arbitration, and to dismiss remaining claims for lack of jurisdiction will be denied.

The question then becomes whether the Court should stay this lawsuit pending resolution of the Texas action.  Section 3 of the FAA governs the issuance of a stay pending arbitration.  The statute states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Before staying this case under § 3, the Court must be satisfied that the issues involved in the suit are referable to arbitration.  With regard to whether issues are referable to arbitration, the

Supreme Court has held: "Although the Court has also long recognized and enforced a liberal federal policy favoring arbitration agreements, it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations and citations omitted).

While the Western District of Texas must decide the issue of arbitrability, the Court makes the following observations. Under the Federal Arbitration Act, written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984). The FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Even when a party claims the contract itself was fraudulently induced, such a claim does not affect the parties' obligation to arbitrate. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967).

The Supreme Court has held that the determination of whether the arbitration provision is valid is distinct from the determination of whether the contract as a whole is valid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006), wherein, the Court stated:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

In *Buckeye*, the Court emphasized that "regardless of whether the challenge is brought in

14

federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. The Supreme Court has additionally held: "When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

This case raises some interesting questions concerning choice of law. In paragraph 29 of the ETA, the parties agreed that the ETA would be enforced and interpreted under New Mexico law. (Doc. 3-4 ¶ 29.) MEI relies on "New Mexico's established rules of construction and federal law interpreting similar arbitration provisions. . . ." (Doc. 21 at 5.)

In the dispute resolution procedures, which are contained in Exhibit C to the ETA, the parties agreed that "[t]he arbitration shall be governed by the United States [sic] Arbitration Act, 9 U.S.C. § 1-16;" (Doc. 3-4, Ex. C). The parties additionally agreed, in the dispute resolution procedures, that the "place of arbitration shall be Austin, Texas." *Id.* Courts have held that, when the arbitration question should be decided in a particular forum, the law from that forum governs. *See Merrill Lynch Price Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (holding that any decision made in the initial forum should be consistent with the law in the circuit where the arbitration decision should be made). Thus, federal law regarding the interpretation of arbitration agreements, the law of New Mexico, or the law of Texas may apply to the arbitration petition.

Regardless of the applicable law, MEI's arguments in opposition to enforcement of the arbitration provisions are not well-founded. In order to avoid the arbitration provisions to which it agreed, MEI contends that the arbitration agreement is permissive insofar as it states the complaining party, "may require" arbitration. In making this argument, MEI completely ignores Paragraph 28 of the ETA, which states: "The parties agree that they will use the procedures outlined

in 'Dispute Resolution' (Exhibit 'C,' attached hereto and made a part hereof), to *resolve* any dispute which may arise between them under this Agreement."  (Doc. 3-4 ¶ 28) (emphasis added).

Many courts have recognized that the use of "may" in the context of an arbitration agreement does give rise to a mandatory arbitration requirement.  *See U.S. v. Bankers Ins. Co.*, 245 F.3d 315, 321 (4th Cir. 2001) (finding that the use of "may" in an arbitration provision gave the parties the option of either arbitrating or abandoning their claim); *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996) (observing interpretation as permissive "would render the arbitration provision meaningless for all practical purposes."); *American Italian Pasta Co. v. Austin Co.*, 914 F.2d 1103, 1104 (8th Cir. 1990) (holding the phrase "if both parties agree" to be a mandatory arbitration provision); *Collins v. Burlington Northern Railroad Co.*, 867 F.2d 542, 544 (9th Cir. 1989) (holding that use of "may" resulted in mandatory arbitration agreement); *Place St. Charles v. J.A. Jones Const. Co.*, 823 F.2d 120, 122 (5th Cir. 1987); *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 683 F.2d 242, 246-47 (7th Cir. 1982) (stating that the phrase "may refer the grievance to arbitration" is mandatory); *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1279 (3d Cir. 1979) (holding arbitration was mandatory despite use of "may"); *Local 771, I.A.T.S.E. v. RKO Gen., Inc.*, 546 F.2d 1107, 1116 (2d Cir. 1977) (determining that phrase "may submit to arbitration" is mandatory); *Nemitz v. Norfolk & W. Ry. Co.*, 436 F.2d 841, 849 (6th Cir. 1971) (finding that an arbitration clause which provided that disputes "may" be referred to arbitration was mandatory if either party to the agreement invoked arbitration); *Bonnot v. Cong. of Indep. Unions Local # 14*, 331 F.2d 355, 359 (8th Cir. 1964) (Blackmun, J.) ("The obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim."); *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418, 421-22 (5th Cir. 1962) (holding "may" clearly gave either party the right to compel arbitration).

16

As Judge Higginbotham observed:

[T]here would be little point in drafting a detailed arbitration scheme if there were no agreement to arbitrate. Parties to a contract can always agree to arbitrate a dispute when it arises. The only purpose for the arbitration clause was to agree that disputes would be arbitrated before any arose.

*Place St. Charles v. J.A. Jones Const. Co.*, 823 F.2d at 122.  Simply put, the Fifth Circuit has held that the use of the word "may," when paired with a mandatory provision and detailed arbitration procedures, does not render an arbitration agreement permissive.  *Id*.

MEI advocates for the application of New Mexico law, which holds: "A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract."  *New Mexico Banquest Investors Corp. v. Peters Corp.,* 159 P.3d 1117 (N.M. App. 2007) (quotation and citation omitted).  Similarly, Texas law, which arguably may apply due to the selection of Austin as the forum for arbitration, holds that it is the duty of the Court to consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement.  *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005).

Plaintiff argues the use of "may" is permissive and that a reasonable reading of the provision would allow Plaintiff to choose between pursuing arbitration and litigation, with neither option being mandatory.  Such a reading is inconsistent with the law and the document when read as a whole.  In light of the use of the mandatory phrase "will use the procedures . . . to resolve any dispute" in Paragraph 28, combined with the detailed provisions for arbitration, the term "may require" undoubtedly means that the complaining party may proceed with arbitration or may drop its complaint.  To be clear, the use of the term "may," when read in conjunction with the mandatory language of Paragraph 28 and the context of the arbitration procedures, renders arbitration

mandatory.  Read as a whole, as required by New Mexico and/or Texas law, the ETA provides for

mandatory arbitration in Austin.  Because the issues in this lawsuit may be referable to arbitration,

the instant lawsuit should be stayed pending a decision by the district court in the Western District

of Texas on the arbitration petition pursuant to §3 of the FAA.

This course of action comports with the approach followed by other district courts in the

Tenth Circuit.  For instance, in *Agrihouse, Inc. v. Agrihouse, L.L.C.*, 2009 WL 1033763 (D. Colo.

Apr.  16, 2009), Judge Daniel recently observed:

> I do not have the authority to compel arbitration pursuant to 9 U.S.C. § 4, because
> the Tenth Circuit has held that "where the parties agreed to arbitrate in a particular
> forum only a district court in that forum has authority to compel arbitration under §
> 4." *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).
> Here, the parties agreed to arbitrate in Seattle, Washington, and this Court is not in
> that forum. However, my authority to compel is not presently at issue, as the only
> relief requested by Defendants is a stay of litigation. Accordingly, I find that the
> precedent requires me to stay this case so that the parties can proceed to arbitration.

*Agrihouse, Inc.*, 2009 WL 1033763 at *5.

In *Silver v. Radiance Medspa Franchise Group, PLLC*, 2006 WL 2925699 (D. Colo. Oct.

10, 2006), the parties had signed a letter agreement that referenced a franchise agreement containing

an arbitration clause.  *Id*. at *2.  The arbitration clause provided that any arbitration would take place

in Phoenix, Arizona.  *Id*.  Plaintiffs brought suit in the district court for the District of Colorado.

Judge Figa determined that *Ansari* required him to order that any arguments regarding arbitrability

be decided in Arizona, and stayed the Colorado action pending resolution by the Arizona court on

the arbitrability of the claims and the outcome of any arbitration.  *Id*.  Judge Figa stated:

> The Court thus declines to dismiss the plaintiffs' claims at this time, for if they are
> correct and the arbitration clause is not enforceable, venue over their suit may well
> lie in Colorado. However, the Court also finds, without preempting any ruling by an
> Arizona court, that there is at least a good faith basis for defendant asserting that this
> dispute is subject to arbitration given the express language of the Franchise
> Agreement. While the Letter Agreement does not contain a separate arbitration

18

> clause, it is apparent from the allegations in the complaint that the two documents
> should be read together. Indeed, plaintiffs' letter demanding rescission collectively
> refers to the Letter Agreement, Franchise Agreement and Addendum as being subject
> to the demand for rescission . . . . Under the language of the Franchise Agreement
> providing for arbitration of any "issues related to the offer and sale of the franchise,"
> the plaintiffs' demand for rescission arguably falls within that arbitration provision.
> The ultimate decision of this issue, however, must be left to an arbitrator or a court
> in Arizona.

*Silver*, 2006 WL 2925699 at *2.

The scenario in the instant case is materially similar to the situations addressed in *Ansari*, *Silver*, and *Agrihouse*, wherein a stay pursuant to § 3 of the FAA was endorsed by the Tenth Circuit and/or imposed by the district court. Based on *Ansari*, this lawsuit should be stayed pursuant to § 3.

Alternatively, even if the issues were not referable to arbitration within the meaning of § 3 of the FAA, a stay should be granted in the interests of comity. In *Roe v. Gray*, 165 F.Supp.2d 1164 (D. Colo. 2001), which presaged *Ansari*, Judge Babcock observed he had "not satisfied [himself] that the case is referable to arbitration, as is required under § 3." *Roe v. Gray*, 165 F.Supp.2d at 1174. Nonetheless, Judge Babcock granted the request for stay, stating:

> In any event, under the principle of comity, I can stay the proceedings in this case in
> order to promote the efficient use of judicial resources. *Kerotest Mfg. Co. v.
> C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) (noting that when two cases
> presenting the same issues are pending in different federal district courts, it has long
> been held that a federal court has the power to stay its proceedings in order to
> promote the efficient use of judicial resources); *Roth v. Bank of Commonwealth*, 583
> F.2d 527, 538 (6th Cir. 1978)(same). Accordingly, [the] motion for stay is granted
> pending the District Court for the Eastern District of North Carolina's decision
> regarding the motion to compel arbitration and possible arbitration.

*Roe v. Gray*, 165 F.Supp.2d at 1174.

For all of these reasons, Defendants' request to stay these proceedings should be granted. This matter is stayed pending a decision by the Western District of Texas on the arbitration petition

filed therein.

**WHEREFORE,**

      **IT IS ORDERED** that Plaintiff MEI Technologies, Inc.'s ("MEI's") Application for Temporary Restraining Order and Preliminary Injunction (Doc. 20), filed on June 11, 2009, is **DENIED**.

      **IT IS FURTHER ORDERED** that Defendants Motion to Dismiss Claims Subject to Arbitration, and to Dismiss Remaining Claim for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Stay Proceedings (Doc. 12), filed on May 28, 2009, is **DENIED** insofar as it requests dismissal and **GRANTED** with respect to the request in the alternative to stay this lawsuit pending a decision by the Western District of Texas on the arbitration petition filed therein.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

20